1.

SLC-3249931-1

SLC-3249931-1

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| VERNON LEE ANDERSON, SR.; ERNESTINE LAWRENCE; KATIE BURNETT-SMITH; MARTHA EMILY YOUNG; MARCELLA PHILLIPS; and BERNICE LAVERNE COLLINS, all of whom are individuals residing in Illinois, on behalf of themselves, and all others similarly situated, ) ) ) ) ) ) ) ) ) ) | |
| Plaintiffs, ) ) | Case No.    09-227-WDS |
| vs.     ) ) | JURY TRIAL DEMANDED |
| DIANE L. HACKETT, EXECUTOR of the ESTATE of PAUL SAUGET, deceased; CERRO FLOW PRODUCTS, INC., a Delaware corporation with its principal place of business located in Illinois; PHARMACIA CORPORATION, a Delaware corporation; SOLUTIA INC. a Delaware corporation; PFIZER, INC., a Delaware corporation; and MONSANTO AG PRODUCTS, LLC, a Delaware limited liability company, ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. ) | |

<u>NOTICE OF REMOVAL</u>

TO: THE HONORABLE JUDGES OF THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF ILLINOIS:

Pursuant to 28 U.S.C. § 1441, *et seq.*, Defendants, Pharmacia Corporation ("Pharmacia" or "Old Monsanto), Solutia Inc. ("Solutia"), and Monsanto AG Products, LLC ("Monsanto AG") (sometimes collectively referred to as "Removing Defendants"), by and through their attorneys,

hereby remove this action to the United States District Court for the Southern District of Illinois. As grounds for removal, the Removing Defendants state:

1.     This Court has jurisdiction of this case pursuant to the Class Action Fairness Act (CAFA), 28 U.S.C. § 1332(d), and the action is removable pursuant to 28 U.S.C. § 1453, in that there is minimal diversity of citizenship, and the amount in controversy exceeds $5,000,000, exclusive of interest and costs.  Alternatively, this Court has jurisdiction and the case is removable pursuant to 28 U.S.C. § 1442(a)(1), in that Removing Defendants are being sued for actions they took under contract with or direction of the United States and various federal agencies and wish to assert federal affirmative defenses.

## I. BACKGROUND

2.     On February 10, 2009, plaintiffs filed a Class Action Complaint against Pharmacia (Old Monsanto), Solutia, Monsanto AG and others in the Circuit Court of St. Clair County, Illinois, the Twentieth Judicial Circuit, styled <u>Vernon Lee Anderson, Sr., et al. v. Diane L. Hackett, Executor of the Estate of Paul Sauget, deceased, et al.</u>, Case No. 09-L73 (the "Lawsuit").  A copy of the Lawsuit is attached as Exhibit A.

3.     On February 25, 2009, Monsanto AG was served with the summons and complaint. On March 10, 2009, Pharmacia (Old Monsanto), Pfizer Inc., and Solutia Inc. were served with the summons and complaint. On March 13, 2009, Cerro Flow Products, Inc. was served with the summons and complaint. On March 5, 2009 Diane L. Hackett, Executor of the Estate of Paul Sauget was served with the summons and complaint.   Copies of the summonses served on Removing Defendants are attached as Exhibit B.

4.     The Lawsuit alleges that, commencing in 1935, defendants released into the environment polychlorinated biphenyls (PCBs) and other allegedly hazardous substances. It seeks recovery on theories of negligence, strict liability, nuisance and trespass.

5.     The complaint seeks relief on behalf of two putative classes of current Illinois citizens: a medical monitoring class consisting of "tens of thousands of members" who lived in the area during any time since 1935 and a remediation class consisting of "hundreds of members" who currently own real property in the area.

## II. DIVERSITY OF CITIZENSHIP

### (a) Citizenship of the Plaintiffs

6.     The complaint alleges that all plaintiffs are "citizens of Illinois." Compl. ¶¶ 11-12. It seeks to certify classes comprised of "current Illinois citizens." Compl. ¶¶52; 78.

7.     Accordingly, on information and belief, Removing Defendants allege that all named plaintiffs are domiciled in and are citizens of the State of Illinois for the purposes of diversity jurisdiction pursuant to 28 U.S.C. § 1332 and 28 U.S.C. § 1441.

### (b) Diverse Citizenship of Four of the Six Defendants

8.     At the time this action was commenced, and at all times since, defendant Monsanto AG Products LLC was and is a limited liability company organized and existing under the laws of the State of Delaware. Compl. ¶21. The sole member of Monsanto AG is Monsanto Company (New Monsanto). New Monsanto is a corporation organized under the law of Delaware with its principal place of business in Missouri. Monsanto AG is therefore a citizen of Delaware and Missouri for purposes of diversity jurisdiction.

9.     At the time this action was commenced and at all times since, defendant Pharmacia Corporation (Old Monsanto) was and is a corporation organized and existing under the laws of the

State of Delaware, with its principal place of business in New Jersey. Pharmacia is therefore a citizen of Delaware and New Jersey for purposes of diversity jurisdiction.

10. At the time this action was commenced, and at all times since, defendant Pfizer, Inc. ("Pfizer") was and is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business in New York. Pfizer is therefore a citizen of Delaware and New York for purposes of diversity jurisdiction.

11. At the time this action was commenced, and at all times since, Defendant Solutia Inc. ("Solutia") was and is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business in Missouri. Solutia is therefore a citizen of Delaware and Missouri for purposes of diversity jurisdiction.

### (c) Citizenship of the Other Two Defendants

12. According to the complaint, defendant Cerro Flow Products, Inc. ("Cerro") is a Delaware corporation with its principal place of business in Illinois. Compl. ¶16. Cerro is therefore alleged to be a citizen of Delaware and Illinois for purposes of diversity jurisdiction.

13. According to the complaint: "Defendant Diane L. Hackett, Executor of the Estate of Paul Sauget, deceased ('Sauget Estate'), is an Illinois citizen, in that (A) Paul Sauget was an Illinois resident at the time of his death in 2004; (B) Diane L. Hackett, the Executor of the Sauget Estate, resides in Illinois; and (C) the Sauget Estate is open and pending in Illinois, in St. Clair County." Compl. ¶14.

### (d) The Minimal Diversity Requirements of §1332(d)(2)(A) are Satisfied

14. This case satisfies the minimal diversity requirements of §1332(d)(2)(A), in that four of the six defendants, Monsanto AG, Pharmacia, Pfizer, and Solutia, are diverse from all of the named plaintiffs and all of the class members.

### III. CORPORATE HISTORY OF THE FOUR DIVERSE CORPORATE DEFENDANTS

15. Prior to 1997, Old Monsanto was engaged in the manufacture of, among other things, chemicals, pharmaceuticals and agricultural products. In 1935, Old Monsanto acquired Swann Chemical Co. and from and after the date of that acquisition through 1977 Old Monsanto manufactured and sold polychlorinated biphenyls or PCBs. Old Monsanto manufactured PCBs at the W.G. Krummrich Plant in the Village of Sauget, Illinois (ceasing in 1977).

16. On September 1, 1997, Old Monsanto spun off certain of its chemical businesses into Solutia, an independent, publicly-owned company. One of the plants conveyed to Solutia as part of this spin-off was the W.G. Krummrich Plant.

17. In 2000, Old Monsanto merged with Pharmacia & UpJohn, Inc., a publicly-owned pharmaceuticals company, with Old Monsanto being the surviving corporation. Upon completion of the merger, Old Monsanto changed its name from Monsanto Company to Pharmacia Corporation. Later in 2000, Pharmacia transferred its agricultural business to a newly-created corporation named Monsanto Company – New Monsanto. New Monsanto later became an independent, publicly-traded company.

18. In connection with this transaction, New Monsanto entered into certain contracts with Pharmacia (Old Monsanto) concerning the parties' liability for certain environmental liabilities, including those in the Village of Sauget and at the W.G. Krummrich Plant.

19. In connection with the confirmation of Solutia's bankruptcy reorganization in February 2008, Solutia and New Monsanto entered into certain contracts concerning the parties' liability for environmental liabilities, including those in the Village of Sauget and at the W.G. Krummrich Plant.

20. Defendant Monsanto AG never had any operations in the Village of Sauget or at the W.G. Krummrich Plant and has been improperly joined as a defendant.

21. In 2003, Pfizer acquired all of the stock of Pharmacia (Old Monsanto).  Since that date, Pharmacia has remained a separate corporation.  Pfizer never had any operations at the W.G. Krummrich Plant and has been improperly joined as a defendant.

## IV. THE AMOUNT IN CONTROVERSY EXCEEDS $5,000,000 EXCLUSIVE OF INTEREST AND COSTS

22. CAFA requires the Court to aggregate the claims of all the class members to determine whether the amount in controversy exceeds the sum of $5,000,000, exclusive of interest and costs.  §1332(d)(6).

23. In this Circuit, the courts determine the jurisdictional amount based on either the value of recovery to the plaintiff or the cost to the defendants.  Each of the proposed classes independently satisfies the $5,000,000 requirement based on the cost to the defendant.

24. The Complaint alleges that the medical monitoring class numbers in the "tens of thousands," Compl. ¶ 74, or 20,000 at a minimum.  Thus, if the cost of monitoring each class member exceeds $250, the jurisdictional minimum is satisfied.  Published opinions have reported annual costs of medical monitoring at close to $1,000 per person.  Alleged experts testifying for plaintiffs in PCB cases have attributed virtually every disease known to mankind to exposure to PCBs, suggesting that testing would be required for all such conditions. While these alleged experts have exaggerated the dangers of PCBs as much as the Complaint does, the jurisdictional amount depends on what plaintiffs claim rather than reality.

**25.** The remediation class seeks an injunction enjoining defendants from any further alleged releases from the alleged "release sites" described in the Complaint, and a judgment in an

amount necessary to cover investigation, assessment and remediation and removal of "all traces" of PCBs and other allegedly hazardous substances that were allegedly released into the environment. Compl. Prayer B(5). Solutia and New Monsanto have already incurred, pursuant to administrative orders from the U.S. Environmental Protection Agency, more than $58 million in cleanup expense in the Villages of Sauget and Cahokia and at the W.G. Krummrich Plant, and Solutia, along with other alleged potentially responsible parties, expect to spend at least $25 million more.

26. The judgment amount requested to cover investigation, assessment and remediation would far exceed $5,000,000 exclusive of interest and costs.

### V. The Local Controversy Exception Does Not Apply

27. In an effort to avoid federal jurisdiction, the Complaint attempts to invoke the "local controversy" exception in 28 U.S.C. § 1332(d)(4)(A). Compl. ¶¶ 25-28. This effort fails both legally and factually.

28. Plaintiffs have entirely overlooked the "related conduct" requirement of § 1332(d)(4)(A)(III), which requires the Court to answer two questions:

A. In what state did the principal injuries alleged in the Complaint occur?

B. In what state did alleged injuries from "any related conduct of each defendant" occur?

Pharmacia (Old Monsanto), New Monsanto and Solutia have all been sued in a variety of different states, including Alabama, Florida, and New York, for damages alleged to have arisen from alleged spills of allegedly hazardous chemicals, including PCBs. Thus, the alleged effects of the "related conduct" have been incurred in numerous states other than Illinois.

29. On March 13, 2007, a class action was filed against Pharmacia (Old Monsanto), New Monsanto and Solutia in the Supreme Court of the State of New York,[1] County of New York, styled <u>Corlew v. General Electric Co.</u>  The putative class action alleged that defendants were responsible for PCB releases into the environment and sought, inter alia, medical monitoring, and compensatory damages associated with the costs for remediation.  Defendants removed the case to the United States District Court for the Southern District of New York.  A true and correct copy of the <u>Corlew</u> complaint is attached as Exhibit C.

## VI.  The Case Is Also Removable Under § 1442(a)(1)

30. Section 1442(a)(1), a/k/a/ federal officer removal, has four requirements:

A. The removing defendant must be a "person."

B. The removing defendant must be "acting under" a federal officer or agency, assisting that officer or agency to carry out official duties.

C. The removing defendant must be sued for action "under color of such office" – <u>i.e.</u>, for taking actions to assist the officer or agency.

D. The removing defendant must have a colorable federal defense to the claim.

31. The instant complaint satisfies all four requirements.

### (a) Each Removing Defendant is a "Person"

32. It is settled, as a matter of law, that a corporation is a "person" for purposes of § 1442(a)(1).  1 U.S.C. § 1.

### (b) Old Monsanto Acted Under Federal Officers and Agencies

33. Old Monsanto acted under federal officers and agencies, and assisted them to perform their official functions, in several respects.

---

[1] Under New York nomenclature, the Supreme Court is the trial court.

      A.      <u>World War II Operations</u>

      34.      Before and during World War II, the military faced serious shortages of certain specialty chemicals that were essential for the war effort. There were no civilian markets for or producers of these chemicals. The Chemical Warfare Service (CWS), a part of the War Department (now the Defense Department), had the responsibility to obtain these vital chemicals.

      35.      In 1940, CWS contracted with Old Monsanto to build a chemical plant for the production of CC-2, a/k/a Impregnate II, on land immediately north of Old Monsanto's W.G. Krummrich Plant. Within the next three years, Monsanto built two more plants for CWS, one to produce additional CC-2, another to produce DAT, a/k/a/ dichloramine-T.

      36.      CWS contracted with Old Monsanto to operate all three plants. At all times, Old Monsanto operated these plants under the direct and detailed control of the plants' four commanding officers: Major Frank Johnson; Major Baughman; Major George W. Russell; and Major Willard L. Finley. All four officers were stationed at the plants and were on site daily.

      B.      <u>Vietnam War Operations.</u>

      37.      During the Vietnam War, the Department of Defense contracted with Old Monsanto to manufacture a herbicide known as Agent Orange. The military used Agent Orange extensively as a defoliant in Vietnam to strip trees and brush of their foliage, thereby denying cover to the Viet Cong and/or the North Vietnamese.

      38.      Between 1965 and 1968 or 1969, Old Monsanto manufactured Agent Orange according to specifications given to it by the Department of Defense. Agent Orange was a mixture of two chemicals: 2, 4-D and 2, 4, 5-T. Old Monsanto manufactured the 2,4-D at the W.G. Krummrich Plant and the 2, 4, 5-T at a plant in West Virginia. It combined the two chemicals into

Agent Orange at the W.G. Krummrich Plant, again according to specifications supplied by the Department of Defense.

    C.    <u>PCB Production.</u>

    39.    In 1970, Old Monsanto ceased production and sale of PCBs for all uses except enclosed uses in electrical transformers and capacitors. Representatives of both the electrical industry and the federal government urged Old Monsanto to continue production and sale of PCBs for transformers and capacitors, and warned that discontinuing the production and sale of PCBs for such purposes would cripple the nation's power grid.

    40.    In March 1972, five federal agencies – the Departments of Agriculture, Commerce, Health, Education and Welfare, and Interior and the Environmental Protection Agency (EPA) – issued an interdepartmental task force report on PCBs. That report found that the continued use of PCBs in capacitors and transformers was "necessary because of the significantly increased risk of fire and explosion and the disruption of electrical service which would result from a ban on PCB use."

    41.    As directed by these federal agencies, Old Monsanto continued to produce PCBs at the Krummrich plant until 1977.

### (c) Plaintiffs' Claims Arise, in Part, from Actions Taken by Old Monsanto to Assist Federal Officers and Agencies

    42.    The Lawsuit arises, in part, from the actions that Old Monsanto took in furtherance of the foregoing activities under the direction, supervision and control of these federal officers and agencies.

    A.    <u>World War II.</u>

    43.    The chemicals used or produced in the wartime production at the Krummrich site included a number of potentially hazardous substances, including aniline hydrochloride,

dichloroaniline, acetic acid, ammonium chloride, ammonium acetate, ammonium sulfate, acetyl urea, trichloroacetinide, acetylene tetrachloride, benzyl, benzaldehyde, benzoin, sodium cyanide, sodium nitrate, sulfuric acid, guanidine carbonate, chlorine, sodium hydroxide, hydrochloric acid and ethanol.

44. The plants that Old Monsanto operated under contract with CWS used PCBs and the plant also had PCB transformers. Some leaks of these PCBs may have occurred during these operations.

45. The federal officers in charge of the CWS plants controlled every aspect of their operation, including the purchase of raw materials, the handling of all products at the plant and the disposition of all waste materials, in accordance with then-prevailing environmental standards. All raw materials, finished materials and residues were the property of the government. To the extent that hazardous substances were released at the W.G. Krummrich Plant or other "release sites", a portion of those releases would have occurred during 1942-1945.

46. The United States, through the Department of Defense, is a potentially responsible party for disposals of waste into one or more "release sites" and currently is a party to other litigation in this Court regarding releases of hazardous substances at one or more of the "release sites."

  B. <u>Vietnam War</u>

47. One of the ingredients in Agent Orange, 2, 4, 5-T, can contain miniscule amounts of a chemical popularly known as dioxin. Thus, the Agent Orange which Old Monsanto prepared to Department of Defense specifications can also contain miniscule amounts of dioxin.

48. Old Monsanto manufactured and handled Agent Orange in accordance with specifications set by the Department of Defense and in accordance with then-prevailing

environmental standards.  Under the contract with the Department of Defense, the Department took title to and possession of the Agent Orange at the W.G. Krummrich Plant.  To the extent that hazardous substances were released at the W.G. Krummrich Plant, a portion of those releases would have occurred during 1965-1969.

    C.    <u>PCBs.</u>

49.    During the period 1972 through 1977, Old Monsanto manufactured PCBs as urged by the United States and in accordance with then-prevailing environmental standards.  To the extent that PCBs were released at the W.G. Krummrich Plant, a portion of those releases would have occurred during 1972-1977.

**(d) Removing Defendants Have Colorable Defenses to Plaintiffs' Claims**

50.    Pharmacia (Old Monsanto) and Solutia have a colorable federal defense under the government contractor defense, in that Old Monsanto produced products for the federal government under reasonably precise specifications approved by the federal government, the products conformed to those specifications and the federal government knew at least as much as Old Monsanto about the potential dangers of such products.

51.    Pharmacia (Old Monsanto) and Solutia have a colorable federal defense to these claims based on 50 U.S.C. App. § 2157, in that the production, mixture and sale of Agent Orange was done pursuant to an order of the Department of Defense.

52.    Pharmacia (Old Monsanto) and Solutia have a colorable federal defense to these claims based on the principles that underlie the government contractor defense.  Specifically:

    A.    The federal government had a uniquely federal interest in keeping the national power grid in operation during the 1970's.

    B.    There is a significant conflict between the duties allegedly owed to plaintiffs under

        state law and the federal interest in keeping the national power grid in operation.

    C.    The federal government knew as much or more about the risks and benefits of PCBs as Old Monsanto.

53.    Pharmacia (Old Monsanto) and Solutia have a colorable federal defense of preemption in that EPA has issued administrative orders to these Defendants mandating all remediation work that has been done to date, is likely to issue additional administrative orders or enter judicial consent decrees in the future, and the proposed relief plaintiffs seek is inconsistent with such orders and future consent decrees.

54.    Pharmacia (Old Monsanto) and Solutia have a colorable federal defense under the Toxic Substances Control Act, in that 15 U.S.C. § 2617(a)(2) preempts any state "requirement" that differs from rules adopted by EPA regulating toxic substances. Numerous cases hold that common law actions for damage are a "requirement."

## VII. THE REMOVAL IS TIMELY & REMOVING DEFENDANTS HAVE COMPLIED WITH THE PROCEDURAL REQUIREMENTS OF 28 U.S.C. §1446(a)

55.    The summonses and complaint attached to this notice as Exhibits A and B are the only process, pleadings, or orders served upon the defendants to date in this action.

56.    Service on Monsanto AG was effected on February 25, 2009, and this notice of removal is filed within 30 days of that date. The other defendants were not served until after that date.

57. Consents to removal by other defendants are not required under CAFA or § 1442(a)(1), however, all three co-defendants have advised counsel for the Removing Defendants that they consent to this removal.

58. Removing Defendants will also serve all other parties with copies of this notice and will file a notice of filing of same with the Clerk of the Circuit Court of St. Clair County, Illinois, in and for the Twentieth Judicial Circuity, as required by 28 U.S.C. § 1446(d).

## JURY TRIAL DEMANDED

59. Removing Defendants demand a trial by jury on all issues.

WHEREFORE, Removing Defendants Monsanto AG Products, LLC, Pharmacia Corporation and Solutia Inc. give notice that the Lawsuit is removed from the Circuit Court in and for St. Clair County, Illinois, the Twentieth Judicial Circuit, to the United States District Court for the Southern District of Illinois, for the exercise of jurisdiction over the Lawsuit as though the Lawsuit had originally been instituted in this Court.

        COOK, YSURSA, BARTHOLOMEW,
         BRAUER & SHEVLIN, LTD.

        /s/ Bernard J. Ysursa

          Bruce N. Cook
          Bernard J. Ysursa
          12 West Lincoln Street
          Belleville, IL  62220-2085
          Telephone:  (618) 235-3500

        Attorneys for Defendants Pharmacia Corporation,
        Solutia Inc. and
        Monsanto AG Products, LLC

        HUSCH BLACKWELL SANDERS LLP

        <u>/s/ Joseph G. Nassif (with consent)</u>
        Joseph G. Nassif
        Carol A. Rutter
        Adam E. Miller
        190 Carondelet Plaza, Suite 600
        St. Louis, MO 63105
        main: 314.480.1500
        fax: 314.480.1505

        Attorneys for Defendants Pharmacia Corporation,
        Solutia Inc. and
        Monsanto AG Products, LLC

**CERTIFICATE OF SERVICE**

       The undersigned hereby certifies that a true and accurate copy of the foregoing instrument was forwarded this 25th day of March, 2009, by first class mail, postage prepaid to (and a copy by electronic transmission to Paul Schoen):

Robert Leslie Palmer
Gregory A. Cade
H. Gregory Harp
Christina E. Wall
Mark L. Rowe
Environmental Litigation Group, P.C.
3529 Seventh Avenue South
Birmingham, Alabama 35222

Paul G. Schoen
Schoen Walton Telken & Foster, LLC
412 Missouri Avenue
East St. Louis, Illinois 62201

James L. "Larry" Wright
One Congress Plaza
Suite 1010, 111 Congress
Austin, Texas 78701

                                                    /s/ Bernard J. Ysursa